George Tilzer, J.
In this proceeding brought pursuant to article 78 of the Civil Practice Act, petitioner seeks to review and annul several orders of the State Rent Administrator, the *616 last of which affirms an order of the local rent administrator which required petitioner to maintain 24-hour lobby attendant service and to restore mail collection service to the tenants.
Although petitioner apparently purports to review all of the orders made in this protracted proceeding, it is clear that only that of March 19, 1957 may be considered for the reason that the earlier orders became final more than 30 days prior to the bringing of this application and a review thereof is barred within the purview of section 8 of the State Residential Rent Law (L. 1946, ch. 274, as amd.).
It is asserted by petitioner that the determination of the State Rent Administrator is illegal, unreasonable, arbitrary, capricious and contrary to the applicable law for the following reasons: That the letter of the landlord, dated September 13, 1949, upon which the Administrator relied in requiring 24-hour lobby attendant service, was not an agreement, but merely a gratuitous promise, that the tenants are estopped from challenging the reduction of service by acquiescing and permitting that condition to exist for a period of about six years; that when the conversion was started there was no legal requirement that the consent of the Federal Housing Expediter be obtained for that purpose and therefore no lobby attendant service could have been legally required of him at that time; that tenants are guilty of laches; that the question of continuation of postal service is solely under control of the post office and not the landlord; that of the 75 tenants in the building, about 32 are new or decontrolled tenants and they, not having ever received the services allegedly reduced, are not now entitled thereto; and that lobby attendant service was not provided nor required to be provided on March 1, 1950, the freeze date specified in the rent regulations.
I find no merit to the contentions of the petitioner. Under section 24 of the State Rent and Eviction Regulations, the landlord is required to provide, among other things, ‘‘ the same essential services, * * * as were provided, or were required to be provided, on March 1,1950 ”. (Also, see, Matter of Everly v. Weaver, 7 Misc 2d 965.) In the event that there has been a decrease in such essential services, the Administrator is authorized to decrease the maximum rent commensurate therewith (State Rent and Eviction Regulations, § 34; State Residential Rent Law, § 4, subd. 5, par. (b), [L. 1946, ch. 274, as amd.]).
Examination of the record indicates that the basis of the Rent Administrator’s determination is a finding that the taking away of the elevator operators was a decrease in essential services, in that it constituted a loss of necessary protection there *617 tofore provided for the benefit of the tenants and also caused the loss of the Government mail collection service. To compensate therefor, the landlord was required to supply 24-hour lobby attendant service.
The question therefore presented is whether that determination was arbitrary, capricious, unreasonable or illegal. In my opinion it was not. It has been held that the protection provided tenants by the presence of elevator men in the lobby of a building of this type is an essential service and that the rent commission has the power, in enforcing the rent control statutes, to impose appropriate conditions in consenting to their elimination (Matter of Jerlan Holding Corp. v. McGoldrick, 281 App. Div. 545). Such conditions may include a reduction in rent or the requirement that 24-hour lobby attendant service be supplied in lieu of the elevator operators (Matter of Jerlan Holding Corp., supra; Matter of First Terrace Gardens v. McGoldrick, 1 N Y 2d 1; also, see, Matter of United Security Corp. v. McGoldrick, 281 App. Div. 859). This is not a case where the commissioner has restored doorman service, as such, which had been long discontinued, as petitioner asserts. The service in question is that of incidental lobby protection supplied by the elevator operators and taken away with their removal. That service was found to be essential under the facts present herein and petitioner fails to show that such a finding was not warranted. In such a case the Administrator had the right to order the lobby service as a substitute equivalent essential service, as indicated in the Jerlan case.
There is no substance to the landlord’s claim that tenants are barred from the relief granted to them by reason of waiver, laches or estoppel. Section 15 of the State Rent and Eviction Regulations specifically voids any agreement by a tenant which attempts to waive any rights granted to him under the rent laws. Obviously, if a tenant cannot deprive himself of the protection of the rent laws by voluntary act, he certainly cannot do so merely through failure to take positive action to enforce those rights. Nor is there any validity to the claim that when the conversion was contracted for, there was no requirement that permission be obtained from the Federal Housing Expediter. It appears affirmatively, that during the course of and prior to the full conversion of both elevators, the expediter, in a memorandum on this type of situation, specifically stated that the removal of lobby or elevator personnel resulting from a change in elevator service, as here, would be considered a substantial reduction in service. No purpose would have been served in issuing that memorandum if it was not meant to indicate that *618 such a step could not be taken without appropriate action by the expediter. Certainly petitioner must have understood that to be so for, of his own volition, he notified tenants by letter shortly thereafter, that he would ‘ ‘ maintain twenty-four hours a day coverage of the halls and lobby * * * as long as the same is legally required.” It is pertinent to note that he did so till August, 1950, which is after the freeze date specified in section 24 of the State Bent and Eviction Begulations. Under similar circumstances this court has upheld the Bent Administrator’s determination that the taking away of elevator operators was a decrease in essential services for which the tenants were entitled to a reduction in rent even though the conversion took place long before the application for a reduction was made (Matter of Haberman, N. Y. L. J., May 10, 1954, p. 7, col. 8, Hecht, J.).
So far as the loss of postal collection services are concerned, it is clear that it was directly due to the removal of the elevator personnel. That necessitated keeping the front door locked, thereby preventing free access by postmen to the building, which was an absolute prerequisite for the maintenance of those services.
The record in this case is a voluminous one and, in my opinion, amply supports the Administrator’s finding that the removal of the elevator operators and the mail collection service constituted a decrease in essential service within the purview of the rent laws. Under the circumstances, it cannot be said that the order here attacked is illegal, arbitrary, capricious or unreasonable. The application is therefore denied.